CIRCUIT CIVIL

# CASE SUMMARY
## CASE NO. 2017-026994-CA-01

| | | |
|---|---|---|
| SHAREESE PETERS JACKSON | § | Location: **Circuit Civil** |
| vs | § | Judicial Officer: **(Section, CA 32)** |
| MIAMI-DADE COUNTY et al | § | Filed on: **11/22/2017** |
| | § | State Case Number: **132017CA026994000001** |
| | § | |

---

### CASE INFORMATION

Case Type: **Other Civil Complaint**

---

| DATE | CASE ASSIGNMENT |
|---|---|

**Current Case Assignment**

| | |
|---|---|
| Case Number | 2017-026994-CA-01 |
| Court | Circuit Civil |
| Date Assigned | 11/22/2017 |
| Judicial Officer | (Section, CA 32) |

---

### PARTY INFORMATION

| | | Lead Attorneys |
|---|---|---|
| Plaintiff | **PETERS JACKSON, SHAREESE** | **Fernandez, Andres F** |
| | | *Retained* |
| | | 305-329-2990(W) |
| Defendant | **MIAMI-DADE COUNTY** | |
| | **SLIMACK, MARK H.** | |

---

| DATE | EVENTS & ORDERS OF THE COURT | INDEX |
|---|---|---|
| 02/09/2018 | Service Returned | *Index # 7* |
| 02/02/2018 | **20 Day Summons Issued**<br>MIAMI-DADE COUNTY<br>Unserved<br>SLIMACK, MARK H.<br>Unserved | |
| 02/02/2018 | 20 Day Summons Issued | *Index # 4* |
| 02/02/2018 | Amended Complaint | *Index # 6* |
| 11/22/2017 | Complaint | *Index # 2* |
| 11/22/2017 | Civil Cover | *Index # 1* |

---

| DATE | FINANCIAL INFORMATION |
|---|---|

**Plaintiff** PETERS JACKSON, SHAREESE

| | |
|---|---|
| Total Charges | 401.00 |
| Total Payments and Credits | 401.00 |
| **Balance Due as of 2/21/2018** | **0.00** |

Filing # 64513861 E-Filed 11/22/2017 08:56:03 AM

## FORM 1.997. CIVIL COVER SHEET

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner for the use of the Clerk of Court for the purpose of reporting judicial workload data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

I. **CASE STYLE**

IN THE CIRCUIT COURT OF THE <u>ELEVENTH</u>   JUDICIAL CIRCUIT,
IN AND FOR <u>MIAMI-DADE</u>   COUNTY, FLORIDA

Case No.: *17-26994 CA-01*
Judge: _____

<u>SHAREESE PETERS JACKSON</u>
Plaintiff
vs.
<u>MIAMI-DADE COUNTY, MARK H. SLIMACK</u>
Defendant

II. **TYPE OF CASE**

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence – other
  ☐ Business governance
  ☐ Business torts
  ☐ Environmental/Toxic tort
  ☐ Third party indemnification
  ☐ Construction defect
  ☐ Mass tort
  ☐ Negligent security
  ☐ Nursing home negligence
  ☐ Premises liability – commercial
  ☐ Premises liability – residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
  ☐ Commercial foreclosure $0 - $50,000
  ☐ Commercial foreclosure $50,001 - $249,999
  ☐ Commercial foreclosure $250,000 or more
  ☐ Homestead residential foreclosure $0 – 50,000
  ☐ Homestead residential foreclosure $50,001 - $249,999
  ☐ Homestead residential foreclosure $250,000 or more
  ☐ Non-homestead residential foreclosure $0 - $50,000
  ☐ Non-homestead residential foreclosure $50,001 - $249,999

☐ Non-homestead residential foreclosure $250,00 or more
☐ Other real property actions $0 - $50,000
☐ Other real property actions $50,001 - $249,999
☐ Other real property actions $250,000 or more

☐ Professional malpractice
  ☐ Malpractice – business
  ☐ Malpractice – medical
  ☐ Malpractice – other professional
☒ Other
  ☐ Antitrust/Trade Regulation
  ☐ Business Transaction
  ☒ Circuit Civil - Not Applicable
  ☐ Constitutional challenge-statute or ordinance
  ☐ Constitutional challenge-proposed amendment
  ☐ Corporate Trusts
  ☐ Discrimination-employment or other.
  ☐ Insurance claims
  ☐ Intellectual property
  ☐ Libel/Slander
  ☐ Shareholder derivative action
  ☐ Securities litigation
  ☐ Trade secrets
  ☐ Trust litigation

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order. Yes ☐ No ☒

III. **REMEDIES SOUGHT** (check all that apply):
    ☒ Monetary;
    ☐ Non-monetary declaratory or injunctive relief;
    ☒ Punitive

IV. **NUMBER OF CAUSES OF ACTION: (    )**
(Specify)

    <u>5</u>

V. **IS THIS CASE A CLASS ACTION LAWSUIT?**
    ☐ Yes
    ☒ No

VI. **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
    ☒ No
    ☐ Yes – If "yes" list all related cases by name, case number and court:

VII. **IS JURY TRIAL DEMANDED IN COMPLAINT?**
    ☒ Yes
    ☐ No

---

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature <u>s/ Andres F Fernandez</u>    FL Bar No.: <u>111967</u>
    Attorney or party                         (Bar number, if attorney)

<u>Andres F Fernandez</u>   <u>11/22/2017</u>
    (Type or print name)                       Date

Filing # 64513861 E-Filed 11/22/2017 08:56:03 AM

IN THE CIRCUIT COURT OF THE 11th
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

SHAREESE PETERS JACKSON,                     CASE NO. :

     Plaintiff,

v.

MIAMI-DADE COUNTY, a municipal entity;
MARK H. SLIMACK, in his individual and
his official capacity as a Miami-Dade County
Police Officer,

     Defendants.
_____/

## **COMPLAINT**

Plaintiff, SHAREESE PETERS JACKSON ("Ms. JACKSON"), by and through undersigned counsel, sues Defendants, MIAMI-DADE COUNTY ("MIAMI-DADE COUNTY" or the "COUNTY"), and MARK H. SLIMACK ("SLIMACK"), and in support thereof alleges as follows:

### **JURISDICTION AND VENUE**

1.    This is an action for damages in excess of Fifteen thousand dollars ($15,000.00), exclusive of attorneys' fees, costs, and interest.

2.    Plaintiff's claims arise pursuant to the Civil Rights Act of 1871, 42 U.S.C. §1983, 42 U.S.C. § 1988, and the Fourth and Fourteenth Amendments of the United States Constitution, as well as under the laws of the State of Florida.

3.    This action arises from the excessive use of force against, and the unlawful detention and arrest of, SHAREESE PETERS JACKSON by Defendant SLIMACK, a Miami-Dade County Police officer, in violation of Ms. JACKSON's constitutionally protected rights as guaranteed by the United States Constitution, the laws of the State of Florida, and common law.

4.    All conditions precedent to the maintenance of this action have been performed or have occurred prior to the filing of this action, including the notice requirements set forth in Florida Statute § 768.28.   A copy of the notice letter provided by Plaintiff is attached to this Complaint as Exhibit A.

## PARTIES

5.    Plaintiff, SHAREESE PETERS JACKSON, is a resident of Miami-Dade County, Florida and is otherwise sui juris.

6.    Ms. JACKSON is an African-American female, who is 5'3" tall and, at all material times to this Complaint, weighed approximately 105 pounds.

7.    Defendant, MIAMI-DADE COUNTY, is a political subdivision of the State of Florida.

8.    MIAMI-DADE COUNTY operates and controls and the Miami-Dade Police Department ("MDPD"), its police officers, employees, agents, and representatives, including, but not limited to, Defendant SLIMACK.

9.    At all material times, Defendant SLIMACK was employed by the MDPD as a police officer and was acting within the course and scope of his employment with the MDPD, which department is, in turn, operated and controlled by Defendant MIAMI-DADE COUNTY.

10.    At all material times, Defendant SLIMACK was licensed by the State of Florida to work as a police officer, and is otherwise sui juris.

11.    Defendant SLIMACK is being sued in his individual capacity, as well as in his official capacity for his actions as a police officer for the MDPD.

12.    Defendant SLIMACK's MDPD badge number is 4512.

2

## GENERAL ALLEGATIONS APPLICABLE TO ALL COUNTS

13.     On or about January 1, 2014, Defendant SLIMACK responded to a call involving an alleged fight at Hunter's Hurricane Lounge, located at 29301 S.W. 152nd Avenue, in Homestead, Miami-Dade County, Florida ("Hunter's Lounge").

14.     Outside of Hunter's Lounge, Defendant SLIMACK illegally and deliberately used excessive force and unlawfully arrested Ms. JACKSON, in violation of multiple Miami-Dade County Police Department policies and well-established law.

15.     Defendant SLIMACK's actions resulted in Ms. JACKSON suffering serious injuries and other damages.

16.     Defendant SLIMACK's use of excessive force and his unlawful arrest of Ms. JACKSON resulted in Ms. JACKSON being detained for 24 hours in a holding cell and suffering severe injuries.

17.     Upon information and belief, Defendant SLIMACK has been employed as a police officer with the MDPD since at least 1998.

18.     Upon information and belief, during the term of Defendant SLIMACK's employment as a police officer with the MDPD, the MDPD's Professional Compliance Bureau's Internal Affairs Section has received at least sixteen (16) complaints against Defendant SLIMACK (the "Internal Affairs Complaints").

19.     At least ten (10) of the sixteen (16) Internal Affairs Complaints against Defendant SLIMACK involved the alleged use of excessive force by Defendant SLIMACK.

20.     Upon information and belief, approximately 85% of the Internal Affairs Complaints against Defendant SLIMACK have come from ethnic minorities, and 100% of them have been filed either by ethnic minorities or women.

3

21.     Prior to the incident that is the subject of this action, Ms. JACKSON had suffered a broken jaw and had undergone two surgeries to correct it -- one on November 26, 2013 and the other on December 23, 2013.

22.     As part of Ms. JACKSON's post-operative treatment, she was prescribed pain medication to alleviate the pain resulting from her surgeries.

23.     On December 31, 2013, Ms. JACKSON accompanied her fiancé, Willie Allen, and her cousin, Eugene Peters, to Hunter's Lounge to celebrate the New Year.

24.     While at Hunter's Lounge, Ms. JACKSON's fiancé and her cousin were harassed by a group of men who appeared to be trying to start a fight.

25.     Shortly thereafter, the MDPD received a complaint regarding a fight at Hunter's Lounge, and Defendant SLIMACK responded to the call.

26.     When Defendant SLIMACK arrived at Hunter's Lounge, Ms. JACKSON, her fiancé, and her cousin were standing outside the premises waiting for the police to arrive.

27.     Upon seeing Defendant SLIMACK, Ms. JACKSON immediately requested his help, and specifically told him that she was recovering from a broken jaw.

28.     Defendant SLIMACK responded by pushing Ms. JACKSON aside, telling her that he was not there for her.

29.     Defendant SLIMACK then entered Hunter's Lounge and, after not finding the alleged fight, went back outside to speak with Ms. JACKSON.

30.     At that point, when Defendant SLIMACK attempted to speak with Ms. JACKSON, she refused to talk to him and told him that he had behaved like an "asshole" and no longer needed his help.

4

31.     In response to Ms. JACKSON's comment, Defendant SLIMACK grabbed Ms. JACKSON by the arm and the back of the neck, and violently slammed her face and upper body against his marked police car.

32.     As Defendant SLIMACK continued to smash Ms. JACKSON's face and jaw against his police vehicle, he told her that "since [she had] called [him] an asshole, [he would] show [her] an asshole."

33.     Defendant SLIMACK then began to choke Ms. JACKSON by pushing her face down with increasing force against his marked police car.

34.     By this point, Ms. JACKSON was in excruciating pain and kept telling Defendant SLIMACK: "You're choking me! You're supposed to help me."

35.     Defendant SLIMACK then ordered Ms. JACKSON to put her hands behind her back. Ms. JACKSON promptly complied and Defendant SLIMACK proceeded to handcuff her.

36.     Defendant SLIMACK then told Ms. JACKSON that he could smell alcohol on her and accused her of being drunk.

37.     Ms. JACKSON then informed Defendant SLIMACK that she had not been drinking because she was taking a prescription medication because of her broken jaw and her surgeries.

38.     Ms. JACKSON specifically and repeatedly asked Defendant SLIMACK to give her a breathalyzer test.

39.     Despite Ms. JACKSON's insistence, Defendant SLIMACK refused to conduct a breathalyzer or any type of field sobriety test, and simply arrested Ms. JACKSON for alleged disorderly intoxication.

5

40. During the entire time Ms. JACKSON interacted with Defendant SLIMACK, Ms. JACKSON refrained from any actions that would be deemed as inciting violence or as a breach of the peace.

41. Defendant SLIMACK then transported Ms. JACKSON to a holding cell where she was detained for approximately 24 hours.

42. During her detention, Ms. JACKSON repeatedly complained about the severe pain in her jaw and asked for medical assistance. However, despite her pleas, Ms. JACKSON was not provided with any medical assistance.

43. During her detention, Ms. JACKSON's jaw began to swell significantly.

44. Following Ms. JACKSON's release, her jaw continued to swell and the pain progressively worsened.

45. A few days later, on or about January 8, 2014, Ms. JACKSON was unable to withstand the pain from her swollen jaw and sought medical attention. Upon examining Ms. JACKSON, her physician informed her that her jaw had become seriously infected, and he prescribed antibiotics.

46. Although Ms. JACKSON took the antibiotics prescribed by her doctor, her jaw, continued to swell and her pain worsened.

47. Several days after that, on or about January 12, 2014, Ms. JACKSON's jaw began to ooze pus, and she had to be taken to the emergency room.

48. Ms. JACKSON was subsequently admitted to the hospital where she remained hospitalized for almost one week.

49. During her hospitalization, Ms. JACKSON was treated for the infection in her jaw, and the procedure that had to be performed to drain the affected area resulted in permanent scarring to Ms. JACKSON's face.

6

50.     The unfounded charge of "disorderly intoxication" alleged by Defendant SLIMACK against Ms. JACKSON was dismissed.

51.     In addition to the foregoing allegations involving Defendant SLIMACK's use of excessive force against Ms. JACKSON, the MDPD's Internal Affairs records also show that Defendant SLIMACK has been the subject of numerous similar complaints, evidencing Defendant SLIMACK's continued practice and use of excessive force.

52.     All MDPD officers, including Defendant SLIMACK, are subject to the procedures set forth in Chapter 31 of the Miami Dade Police Department Standard Operating Procedures governing MDPD officers' use of force (the "MDPD Procedures").

53.     Despite being subject to the MDPD Procedures, on January 1, 2014, Defendant SLIMACK failed to comply with the standards set forth in these Procedures, which resulted not only in Ms. JACKSON being unlawfully arrested, but also in her suffering serious injury and scarring to her face.

54.     Defendant MIAMI-DADE COUNTY failed to adequately train and educate MDPD police officers, including Defendant SLIMACK, in the use of reasonable and proper force, and failed to enforce the MDPD Procedures.

55.     In addition, Defendant MIAMI-DADE COUNTY failed to conduct any investigation into whether there were policies and training in place to prevent the incident at issue in this Complaint, or whether Defendant SLIMACK conducted himself properly and in compliance with the MDPD Procedures.

56.     Defendant MIAMI-DADE COUNTY, specifically with the knowledge of the MDPD's Police Chief, J.D. Patterson (as well as other Police Chiefs before and after him), authorized, tolerated as institutionalized practices, and ratified its police officers' misconduct by, among other things:

7

a. Failing to properly discipline, restrict, and control its employees, including Defendant SLIMACK, who, according to public records requests and his Internal Affairs file, was known to be unnecessarily violent in his treatment of persons in the community, especially members of minority groups and women;

b. Failing to establish and administer meaningful and effective departmental processes and procedures for dealing with police misconduct complaints;

c. Systematically and summarily responding to such complaints with bureaucratic responses and perfunctory denials intended to mislead and/or appease the public and without due regard to the evidence.

57.    The abuse sustained by Ms. JACKSON due to the excessive and unnecessary force used by MIAMI-DADE COUNTY and its employee, Defendant SLIMACK, is part of a larger and historically repetitive pattern of use of excessive force, which amounts to an unofficial custom and/or policy by MIAMI-DADE COUNTY, and which was adopted and approved by the MDPD's then Police Chief, J.D. Patterson (as well as other MDPD Police Chiefs before and after him).

58.    For many years the MIAMI-DADE POLICE DEPARTMENT has repeatedly been the subject of numerous civilian complaints and investigations into police misconduct and use of excessive force. Many MDPD police officers, including Defendant SLIMACK, are repeat offenders who are either not disciplined or receive only a "slap on the wrist," and are emboldened by the COUNTY's inaction to continue the same behavior without fear of disciplinary action or other repercussions.

59.    MIAMI-DADE COUNTY has historically failed to discipline or prosecute officers for known incidents of excessive use of force, to adequately investigate complaints of excessive use of force, and to take corrective action despite overwhelming evidence of excessive

8

use of force by MDPD officers. The incident that is the subject of this Complaint is not an isolated incident, but rather one of countless others in a pattern and practice of misconduct that has been historically accepted and/or condoned by the MIAMI-DADE POLICE DEPARTMENT and its then Police Chief, J.D. Patterson, as well as by other MDPD Police Chiefs before and after him.

60.    Upon information and belief, Defendant SLIMACK has been cited or investigated on numerous occasions by the MDPD's Internal Affairs Section for similar misconduct, and MIAMI-DADE COUNTY had prior notice of Defendant SLIMACK's propensity to use excessive force and/or to abuse his position as a police officer, but took no meaningful steps to stop his unlawful use of authority.

61.    This is an action at law against Defendants to redress the deprivation, under color of law, statute, custom or usage, of those rights, privileges, and immunities secured to Ms. JACKSON by the Fourteenth Amendment of the United States Constitution and 42 U.S.C § 1983, for deprivation of her right to equal protection, to be free from discrimination on the basis of her gender and race, and for committing various torts and violations arising under the laws and statutes of the State of Florida.

62.    As a result of these unconstitutional and tortuous actions by the Defendants, Ms. JACKSON sustained serious injury to her jaw and scarring of her face, and also suffered great emotional trauma and humiliation.

### COUNT I
**Unnecessary/Excessive Use of Force**
**Pursuant to 42 U.S.C. § 1983**
**(Against Defendant Slimack, Individually)**

63.    Plaintiff realleges paragraphs 1 through 62 of the allegations as if fully set forth herein.

9

64.     On January 1, 2014, Defendant SLIMACK, acting under color of state law in the course and scope of his duties with the MDPD, unlawfully seized and detained Ms. JACKSON.

65.     In the course of Ms. JACKSON's detention, Defendant SLIMACK, acting under color of state law and in the course and scope of his duties with the MDPD, employed patently unreasonable and excessive force against Ms. JACKSON under the circumstances.

66.     Specifically, in the course of the detention of Ms. JACKSON, whom Defendant SLIMACK knew not to be a threat or a suspect and knew to be suffering from a broken jaw, Defendant SLIMACK, exceeding the scope of his duties with the MDPD, grabbed Ms. JACKSON by the arm and back of the neck and slammed her face and upper body onto his marked police car causing Ms. JACKSON excruciating pain and damage to her jaw.

67.     During her detention, Ms. JACKSON did not take any action that objectively or subjectively could have been perceived as posing any threat to the safety of Defendant SLIMACK.

68.     The unlawful arrest and excessive force suffered by Ms. JACKSON at the hands of Defendant SLIMACK was in violation of then clearly-established constitutional law interpreting the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution guaranteeing protection from unreasonable seizures, the right to be free from cruel and unusual punishment, and the right to due process.

69.     As a direct and proximate result of the constitutional violations described herein and committed by Defendant SLIMACK, Ms. JACKSON suffered physical and emotional injuries and will continue to suffer damages.

70.     Defendant SLIMACK, acted maliciously and with intent to cause serious bodily injury to Ms. JACKSON.

71.    In using such excessive and unreasonable force against Ms. JACKSON, Defendant SLIMACK, acted in a manner that was reckless and callously indifferent to Ms. JACKSON's rights under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.

72.    Pursuant to 42 U.S.C. § 1988, SHAREESE PETERS JACKSON seeks attorneys' fees in bringing and prosecuting this action.

WHEREFORE, Plaintiff SHAREESE PETERS JACKSON demands judgment against Defendant SLIMACK in his individual capacity, including costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

### COUNT II
### State Law Battery
### (Against Defendant Slimack)

73.    Plaintiff realleges paragraphs 1 through 62 of the allegations as if fully set forth herein.

74.    On January 1, 2014, Defendant SLIMACK, acting in the course and scope of his employment, did batter, touch, and otherwise strike Ms. JACKSON without her consent and against her will.

75.    Defendant SLIMACK intentionally grabbed Ms. JACKSON by the arm and the back of the neck, and slammed her face and upper body against his marked police car.

76.    The conduct of Defendant SLIMACK was objectively unreasonable and constituted unnecessary and excessive force committed during the course and scope of his employment.

77.    Defendant SLIMACK's battery of Ms. JACKSON, as set forth above, was accomplished by abuse of SLIMACK's position as a law enforcement officer employed by MIAMI-DADE COUNTY.

11

78.     As a direct and proximate result of the actions of the Defendant SLIMACK, Ms. JACKSON has suffered damages, and will continue to suffer into the future, which include physical suffering, the aggravation of a pre-existing condition, pain and suffering, disfigurement, impairment of work ability, medical expenses, loss of time, mental suffering, humiliation, disgrace, loss of enjoyment of life, and has and will continue to incur medical expenses in the treatment of her injuries.

WHEREFORE, Plaintiff SHAREESE PETERS JACKSON requests compensatory damages from Defendant SLIMACK for past and future physical injury, bodily pain, mental pain, humiliation, and all other damages cited above, court costs, and, and any further relief this court deems just and proper.

## COUNT III
### Unofficial Policy, Practice, Procedure of Custom of Excessive Force
### 42 U.S.C. § 1983
### (Against Miami-Dade County)

79.     Plaintiff realleges paragraphs 1 through 62 of the allegations as if fully set forth herein.

80.     At all times relevant to this action, Defendant MIAMI-DADE COUNTY had an unofficial policy, practice, procedure and/or custom of allowing police officers to use excessive force with there being no imminent threat to the police officers.

81.     The aforementioned policies, practices, procedures, and/or customs were consciously chosen and officially sanctioned by MIAMI-DADE COUNTY policymakers. Alternatively, the aforementioned policies, practices, procedures, and/or customs were so widespread and longstanding that MIAMI-DADE COUNTY's policymakers must have known and therefore, were considered unofficial custom, usage, and practice with the force of law. Nonetheless, no action was taken to stop it.

12

82.     Defendant MIAMI-DADE COUNTY permitted this unofficial policy and practice to continue by failing to investigate and discipline officers, such as Defendant SLIMACK, who were the subject of numerous complaints for excessive use of force.

83.     Defendant MIAMI-DADE COUNTY permitted this unofficial policy and practice to continue by failing to conduct any reasonable investigation into the numerous complaints Defendant SLIMACK received for using excessive force.

84.     This unofficial policy, practice, procedure and/or custom caused the violation of Ms. JACKSON's constitutional rights under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

85.     Defendant MIAMI-DADE COUNTY instituted a program that it either knew or should have known would amount to excessive force improperly being used on citizens by Defendant SLIMACK and other MDPD police officers.

86.     This unofficial policy of excessive force amounts to a department-wide exhibition of deliberate indifference to the constitutional rights of Plaintiff and other similarly situated members of the public.

87.     By instituting this grossly unconstitutional unofficial policy, practice, procedure, and/or custom, Defendant MIAMI-DADE COUNTY exhibited a willful, wanton and callous disregard for the constitutional rights of Ms. JACKSON.

88.     Defendant MIAMI-DADE COUNTY implemented and controlled this unofficial policy, practice, procedure, and/or custom and encouraged its officers to utilize this unofficial policy that it knew would improperly and unconstitutionally result in serious injury to individuals in the community.

89.     Defendant MIAMI-DADE COUNTY had direct and actual, or at least constructive, knowledge of the constitutional violations that were occurring under its policy of

13

excessive force, as Defendant SLIMACK has been involved in numerous situations where complaints of Defendant SLIMACK's excessive use of force have been reported to the MIAMI-DADE POLICE DEPARTMENT and its Internal Affairs Section.

90.     The moving force behind Ms. JACKSON's injuries was MIAMI-DADE COUNTY's deliberate indifference to her constitutional rights.   MIAMI-DADE COUNTY ignored the constitutional rights of members of the public who were consistently being subjected to Defendant SLIMACK's unlawful conduct.

91.     Ms. JACKSON's injuries were the obvious consequence of, and are directly linked to, the customary practices of MIAMI-DADE COUNTY, its MIAMI-DADE POLICE DEPARTMENT, and Defendant SLIMACK.

92.     As a direct and proximate result of the actions of MIAMI-DADE COUNTY, as described herein, Defendant SLIMACK was permitted to continue a pattern and custom of using excessive force in violation of the constitutional rights of Ms. JACKSON.

93.     As such, Ms. JACKSON seeks compensatory damages, costs, and all other relief that this Honorable Court deems just and proper.

WHEREFORE, Plaintiff SHAREESE PETERS JACKSON demands judgment against MIAMI-DADE COUNTY, including costs, reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, and any other relief this Court deems just and proper.

### COUNT IV
### State Law Battery
### (Against Defendant Miami-Dade County)

94.     Plaintiff realleges paragraphs 1 through 62 of the allegations as if fully set forth herein.

14

95.     On January 1, 2014, Defendant SLIMACK, acting in the course and scope of his employment, did batter, touch, and otherwise strike Ms. JACKSON without her consent and against her will.

96.     Defendant SLIMACK intentionally grabbed Ms. JACKSON by the arm and the back of the neck, and slammed her face and upper body against his marked police car.

97.     Defendant MIAMI-DADE COUNTY is vicariously liable for the actions of Defendant SLIMACK.

98.     The conduct of Defendant SLIMACK for which MIAMI-DADE COUNTY is responsible was objectively unreasonable and constituted unnecessary excessive force committed during the course and scope of employment.

99.     The battery was carried out by an abuse of Defendant SLIMACK's position as a law enforcement officer employed MIAMI-DADE COUNTY and the MDPD.

100.    Defendant SLIMACK's actions caused Ms. JACKSON physical harm and were committed without the Ms. JACKSON's consent.

101.    As a direct and proximate result of the above mentioned unlawful acts of Defendant SLIMACK, while operating as an agent, servant, and/or employee of Defendant MIAMI-DADE COUNTY, and by and though the unconstitutional policies, customs, and practices of the Defendant MIAMI-DADE COUNTY, Ms. JACKSON has suffered damages, and will continue to suffer into the future, which include physical suffering, the aggravation of a pre-existing condition, pain and suffering, disfigurement, impairment of work ability, medical expenses, loss of time, mental suffering, humiliation, disgrace, loss of enjoyment of life, and has and will continue to incur medical expenses in the treatment of her injuries.

WHEREFORE, Plaintiff SHAREESE PETERS JACKSON requests compensatory damages from Defendant MIAMI-DADE COUNTY for past and future physical injury, bodily

pain, mental pain, humiliation, and all other damages cited above, court costs, and, and any further relief this court deems just and proper.

## COUNT V
### Failure to Train
### Pursuant to 42 U.S.C. § 1983
### (Against Miami-Dade County)

102.    Plaintiff realleges paragraphs 1 through 62 of the allegations as if fully set forth herein.

103.    MIAMI-DADE COUNTY failed to properly and adequately train Defendant SLIMACK regarding his propensity to use excessive force during routine responses to disturbances.

104.    The need for such training was plainly obvious to MIAMI-DADE COUNTY, including its final policymakers, as such conduct deals with a clear constitutional duty that is certain to arise in situations that police officers, including Defendant SLIMACK, face on a regular basis.

105.    MIAMI-DADE COUNTY's failure to train amounted to deliberate indifference to the rights of the Ms. JACKSON and other members of the public with whom Defendant SLIMACK came into contact.

106.    This failure to train caused Defendant SLIMACK to violate Ms. JACKSON's rights under the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution.

107.    MIAMI-DADE COUNTY's failure to train caused Defendant SLIMACK to use excessive force and unlawfully arrest Ms. JACKSON, who was not posing a threat to Defendant SLIMACK or to anyone else.

108.    MIAMI-DADE COUNTY was deliberately indifferent to Ms. JACKSON's rights under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution

16

guaranteeing protection from unreasonable seizures, the right to be free from cruel and unusual punishments, and the right to due process.

109. Based upon the number of prior excessive use force claims against MIAMI-DADE POLICE DEPARTMENT police officer and the complaints against Defendant SLIMACK, MIAMI-DADE COUNTY knew or should have known that there was a need to train and supervise Defendant SLIMACK.

110. As a direct and proximate result of the actions of MIAMI-DADE COUNTY, Ms. JACKSON has suffered damages, and will continue to suffer into the future, which include physical suffering, the aggravation of a pre-existing condition, pain and suffering, disfigurement, impairment of work ability, medical expenses, loss of time, mental suffering, humiliation, disgrace, loss of enjoyment of life, and has and will continue to incur medical expenses in the treatment of her injuries.

111. Pursuant to 42 U.S.C. § 1988, SHAREESE PETERS JACKSON seeks attorneys' fees in bringing and prosecuting this action.

WHEREFORE, Plaintiff SHAREESE PETERS JACKSON demands judgment against Defendant MIAMI-DADE COUNTY, including costs, reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, and any other relief this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff SHAREESE PETERS JACKSON demands trial by jury on all issues so triable. Respectfully submitted,

**[Signature Block on Following Page]**

17

HALL, LAMB HALL, P.A.,                      BERENS, FERNANDEZ & ASSOCIATES, P.A.
Attorneys for Plaintiff                     Attorneys for Plaintiff
2665 South Bayshore Drive, PH-1             2100 Ponce de Leon Blvd. Penthouse-2
Miami, Florida 33133                        Coral Gables, Florida 33134
TEL. 305 374 5030                           TEL. 305 329-2990

*s/: Andrew C. Hall*                        *s/: Andres F. Fernandez*
ANDREW C. HALL                              ANDRES F. FERNANDEZ
Florida Bar No.: 111480                     Florida Bar No.: 111967
MATTHEW P. LETO                             SAMANTHA M. FRAGA-LOPEZ
Florida Bar No.: 014504                     Florida Bar No.: 115957

Filing # 67422567 E-Filed 02/02/2018 10:29:29 AM

IN THE CIRCUIT COURT OF THE 11th
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

SHAREESE PETERS JACKSON,                    CASE NO. : 2017-026994 CA 32

       Plaintiff,

v.

MIAMI-DADE COUNTY, a municipal entity;
MARK H. SLIMACK, in his individual and
his official capacity as a Miami-Dade County
Police Officer,

       Defendants.

_____/

### AMENDED COMPLAINT

    Plaintiff, SHAREESE PETERS JACKSON ("Ms. JACKSON"), by and through

undersigned counsel, sues Defendants, MIAMI-DADE COUNTY ("MIAMI-DADE COUNTY"

or the "COUNTY"), and MARK H. SLIMACK ("SLIMACK"), and in support thereof alleges as

follows:

### JURISDICTION AND VENUE

    1.    This is an action for damages in excess of Fifteen thousand dollars ($15,000.00),

exclusive of attorneys' fees, costs, and interest.

    2.    Plaintiff's claims arise pursuant to the Civil Rights Act of 1871, 42 U.S.C.

§1983, 42 U.S.C. § 1988, and the Fourth and Fourteenth Amendments of the United States

Constitution, as well as under the laws of the State of Florida.

    3.    This action arises from the excessive use of force against, and the unlawful

detention and arrest of, SHAREESE PETERS JACKSON by Defendant SLIMACK, a Miami-

{10944/00522812.1}

Dade County Police officer, in violation of Ms. JACKSON's constitutionally protected rights as guaranteed by the United States Constitution, the laws of the State of Florida, and common law.

4.      All conditions precedent to the maintenance of this action have been performed or have occurred prior to the filing of this action.

## PARTIES

5.      Plaintiff, SHAREESE PETERS JACKSON, is a resident of Miami-Dade County, Florida and is otherwise sui juris.

6.      Ms. JACKSON is an African-American female, who is 5'3" tall and, at all material times to this Complaint, weighed approximately 105 pounds.

7.      Defendant, MIAMI-DADE COUNTY, is a political subdivision of the State of Florida.

8.      MIAMI-DADE COUNTY operates and controls and the Miami-Dade Police Department ("MDPD"), its police officers, employees, agents, and representatives, including, but not limited to, Defendant SLIMACK.

9.      At all material times, Defendant SLIMACK was employed by the MDPD as a police officer and was acting within the course and scope of his employment with the MDPD, which department is, in turn, operated and controlled by Defendant MIAMI-DADE COUNTY.

10.     At all material times, Defendant SLIMACK was licensed by the State of Florida to work as a police officer, and is otherwise sui juris.

11.     Defendant SLIMACK is being sued in his individual capacity, as well as in his official capacity for his actions as a police officer for the MDPD.

12.     Defendant SLIMACK's MDPD badge number is 4512.

## GENERAL ALLEGATIONS APPLICABLE TO ALL COUNTS

13.     On or about January 1, 2014, Defendant SLIMACK responded to a call involving an alleged fight at Hunter's Hurricane Lounge, located at 29301 S.W. 152nd Avenue, in Homestead, Miami-Dade County, Florida ("Hunter's Lounge").

14.     Outside of Hunter's Lounge, Defendant SLIMACK illegally and deliberately used excessive force and unlawfully arrested Ms. JACKSON, in violation of multiple Miami-Dade County Police Department policies and well-established law.

15.     Defendant SLIMACK's actions resulted in Ms. JACKSON suffering serious injuries and other damages.

16.     Defendant SLIMACK's use of excessive force and his unlawful arrest of Ms. JACKSON resulted in Ms. JACKSON being detained for 24 hours in a holding cell and suffering severe injuries.

17.     Upon information and belief, Defendant SLIMACK has been employed as a police officer with the MDPD since at least 1998.

18.     Upon information and belief, during the term of Defendant SLIMACK's employment as a police officer with the MDPD, the MDPD's Professional Compliance Bureau's Internal Affairs Section has received at least sixteen (16) complaints against Defendant SLIMACK (the "Internal Affairs Complaints").

19.     At least ten (10) of the sixteen (16) Internal Affairs Complaints against Defendant SLIMACK involved the alleged use of excessive force by Defendant SLIMACK.

20.     Upon information and belief, approximately 85% of the Internal Affairs Complaints against Defendant SLIMACK have come from ethnic minorities, and 100% of them have been filed either by ethnic minorities or women.

21.     Prior to the incident that is the subject of this action, Ms. JACKSON had suffered a broken jaw and had undergone two surgeries to correct it -- one on November 26, 2013 and the other on December 23, 2013.

22.     As part of Ms. JACKSON's post-operative treatment, she was prescribed pain medication to alleviate the pain resulting from her surgeries.

23.     On December 31, 2013, Ms. JACKSON accompanied her fiancé, Willie Allen, and her cousin, Eugene Peters, to Hunter's Lounge to celebrate the New Year.

24.     While at Hunter's Lounge, Ms. JACKSON's fiancé and her cousin were harassed by a group of men who appeared to be trying to start a fight.

25.     Shortly thereafter, the MDPD received a complaint regarding a fight at Hunter's Lounge, and Defendant SLIMACK responded to the call.

26.     When Defendant SLIMACK arrived at Hunter's Lounge, Ms. JACKSON, her fiancé, and her cousin were standing outside the premises waiting for the police to arrive.

27.     Upon seeing Defendant SLIMACK, Ms. JACKSON immediately requested his help, and specifically told him that she was recovering from a broken jaw.

28.     Defendant SLIMACK responded by pushing Ms. JACKSON aside, telling her that he was not there for her.

29.     Defendant SLIMACK then entered Hunter's Lounge and, after not finding the alleged fight, went back outside to speak with Ms. JACKSON.

30.     At that point, when Defendant SLIMACK attempted to speak with Ms. JACKSON, she refused to talk to him and told him that he had behaved like an "asshole" and no longer needed his help.

31.    In response to Ms. JACKSON's comment, Defendant SLIMACK grabbed Ms. JACKSON by the arm and the back of the neck, and violently slammed her face and upper body against his marked police car.

32.    As Defendant SLIMACK continued to smash Ms. JACKSON's face and jaw against his police vehicle, he told her that "since [she had] called [him] an asshole, [he would] show [her] an asshole."

33.    Defendant SLIMACK then began to choke Ms. JACKSON by pushing her face down with increasing force against his marked police car.

34.    By this point, Ms. JACKSON was in excruciating pain and kept telling Defendant SLIMACK: "You're choking me! You're supposed to help me."

35.    Defendant SLIMACK then ordered Ms. JACKSON to put her hands behind her back. Ms. JACKSON promptly complied and Defendant SLIMACK proceeded to handcuff her.

36.    Defendant SLIMACK then told Ms. JACKSON that he could smell alcohol on her and accused her of being drunk.

37.    Ms. JACKSON then informed Defendant SLIMACK that she had not been drinking because she was taking a prescription medication because of her broken jaw and her surgeries.

38.    Ms. JACKSON specifically and repeatedly asked Defendant SLIMACK to give her a breathalyzer test.

39.    Despite Ms. JACKSON's insistence, Defendant SLIMACK refused to conduct a breathalyzer or any type of field sobriety test, and simply arrested Ms. JACKSON for alleged disorderly intoxication.

40.    During the entire time Ms. JACKSON interacted with Defendant SLIMACK, Ms. JACKSON refrained from any actions that would be deemed as inciting violence or as a breach of the peace.

41.    Defendant SLIMACK then transported Ms. JACKSON to a holding cell where she was detained for approximately 24 hours.

42.    During her detention, Ms. JACKSON repeatedly complained about the severe pain in her jaw and asked for medical assistance.  However, despite her pleas, Ms. JACKSON was not provided with any medical assistance.

43.    During her detention, Ms. JACKSON's jaw began to swell significantly.

44.    Following Ms. JACKSON's release, her jaw continued to swell and the pain progressively worsened.

45.    A few days later, on or about January 8, 2014, Ms. JACKSON was unable to withstand the pain from her swollen jaw and sought medical attention.  Upon examining Ms. JACKSON, her physician informed her that her jaw had become seriously infected, and he prescribed antibiotics.

46.    Although Ms. JACKSON took the antibiotics prescribed by her doctor, her jaw, continued to swell and her pain worsened.

47.    Several days after that, on or about January 12, 2014, Ms. JACKSON's jaw began to ooze pus, and she had to be taken to the emergency room.

48.    Ms. JACKSON was subsequently admitted to the hospital where she remained hospitalized for almost one week.

49.    During her hospitalization, Ms. JACKSON was treated for the infection in her jaw, and the procedure that had to be performed to drain the affected area resulted in permanent scarring to Ms. JACKSON's face.

{10944/00522812.1}

50.     The unfounded charge of "disorderly intoxication" alleged by Defendant SLIMACK against Ms. JACKSON was dismissed.

51.     In addition to the foregoing allegations involving Defendant SLIMACK's use of excessive force against Ms. JACKSON, the MDPD's Internal Affairs records also show that Defendant SLIMACK has been the subject of numerous similar complaints, evidencing Defendant SLIMACK's continued practice and use of excessive force.

52.     All MDPD officers, including Defendant SLIMACK, are subject to the procedures set forth in Chapter 31 of the Miami Dade Police Department Standard Operating Procedures governing MDPD officers' use of force (the "MDPD Procedures").

53.     Despite being subject to the MDPD Procedures, on January 1, 2014, Defendant SLIMACK failed to comply with the standards set forth in these Procedures, which resulted not only in Ms. JACKSON being unlawfully arrested, but also in her suffering serious injury and scarring to her face.

54.     Defendant MIAMI-DADE COUNTY failed to adequately train and educate MDPD police officers, including Defendant SLIMACK, in the use of reasonable and proper force, and failed to enforce the MDPD Procedures.

55.     In addition, Defendant MIAMI-DADE COUNTY failed to conduct any investigation into whether there were policies and training in place to prevent the incident at issue in this Complaint, or whether Defendant SLIMACK conducted himself properly and in compliance with the MDPD Procedures.

56.     Defendant MIAMI-DADE COUNTY, specifically with the knowledge of the MDPD's Police Chief, J.D. Patterson (as well as other Police Chiefs before and after him), authorized, tolerated as institutionalized practices, and ratified its police officers' misconduct by, among other things:

a. Failing to properly discipline, restrict, and control its employees, including Defendant SLIMACK, who, according to public records requests and his Internal Affairs file, was known to be unnecessarily violent in his treatment of persons in the community, especially members of minority groups and women;

b. Failing to establish and administer meaningful and effective departmental processes and procedures for dealing with police misconduct complaints;

c. Systematically and summarily responding to such complaints with bureaucratic responses and perfunctory denials intended to mislead and/or appease the public and without due regard to the evidence.

57.   The abuse sustained by Ms. JACKSON due to the excessive and unnecessary force used by MIAMI-DADE COUNTY and its employee, Defendant SLIMACK, is part of a larger and historically repetitive pattern of use of excessive force, which amounts to an unofficial custom and/or policy by MIAMI-DADE COUNTY, and which was adopted and approved by the MDPD's then Police Chief, J.D. Patterson (as well as other MDPD Police Chiefs before and after him).

58.   For many years the MIAMI-DADE POLICE DEPARTMENT has repeatedly been the subject of numerous civilian complaints and investigations into police misconduct and use of excessive force. Many MDPD police officers, including Defendant SLIMACK, are repeat offenders who are either not disciplined or receive only a "slap on the wrist," and are emboldened by the COUNTY's inaction to continue the same behavior without fear of disciplinary action or other repercussions.

59.   MIAMI-DADE COUNTY has historically failed to discipline or prosecute officers for known incidents of excessive use of force, to adequately investigate complaints of excessive use of force, and to take corrective action despite overwhelming evidence of excessive

{10944/00522812.1}

use of force by MDPD officers. The incident that is the subject of this Complaint is not an isolated incident, but rather one of countless others in a pattern and practice of misconduct that has been historically accepted and/or condoned by the MIAMI-DADE POLICE DEPARTMENT and its then Police Chief, J.D. Patterson, as well as by other MDPD Police Chiefs before and after him.

60.     Upon information and belief, Defendant SLIMACK has been cited or investigated on numerous occasions by the MDPD's Internal Affairs Section for similar misconduct, and MIAMI-DADE COUNTY had prior notice of Defendant SLIMACK's propensity to use excessive force and/or to abuse his position as a police officer, but took no meaningful steps to stop his unlawful use of authority.

61.     This is an action at law against Defendants to redress the deprivation, under color of law, statute, custom or usage, of those rights, privileges, and immunities secured to Ms. JACKSON by the Fourteenth Amendment of the United States Constitution and 42 U.S.C § 1983, for deprivation of her right to equal protection, to be free from discrimination on the basis of her gender and race, and for committing various torts and violations arising under the laws and statutes of the State of Florida.

62.     As a result of these unconstitutional and tortuous actions by the Defendants, Ms. JACKSON sustained serious injury to her jaw and scarring of her face, and also suffered great emotional trauma and humiliation.

## COUNT I
### Unnecessary/Excessive Use of Force
### Pursuant to 42 U.S.C. § 1983
### (Against Defendant Slimack, Individually)

63.     Plaintiff realleges paragraphs 1 through 62 of the allegations as if fully set forth herein.

{10944/00522812.1}

64.     On January 1, 2014, Defendant SLIMACK, acting under color of state law in the course and scope of his duties with the MDPD, unlawfully seized and detained Ms. JACKSON.

65.     In the course of Ms. JACKSON's detention, Defendant SLIMACK, acting under color of state law and in the course and scope of his duties with the MDPD, employed patently unreasonable and excessive force under the circumstances.

66.     Specifically, in the course of the detention of Ms. JACKSON, whom Defendant SLIMACK knew not to be a threat or a suspect and knew to be suffering from a broken jaw, Defendant SLIMACK, exceeding the scope of his duties with the MDPD, grabbed Ms. JACKSON by the arm and back of the neck and slammed her face and upper body onto his marked police car causing Ms. JACKSON excruciating pain and damage to her jaw.

67.     During her detention, Ms. JACKSON did not take any action that objectively or subjectively could have been perceived as posing any threat to the safety of Defendant SLIMACK.

68.     The unlawful arrest and excessive force suffered by Ms. JACKSON at the hands of Defendant SLIMACK was in violation of then clearly-established constitutional law interpreting the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution guaranteeing protection from unreasonable seizures, the right to be free from cruel and unusual punishment, and the right to due process.

69.     As a direct and proximate result of the constitutional violations described herein and committed by Defendant SLIMACK, Ms. JACKSON suffered physical and emotional injuries and will continue to suffer damages.

70.     Defendant SLIMACK, acted maliciously and with intent to cause serious bodily injury to Ms. JACKSON.

{10944/00522812.1}

71.     In using such excessive and unreasonable force against Ms. JACKSON, Defendant SLIMACK, acted in a manner that was reckless and callously indifferent to Ms. JACKSON's rights under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.

72.     In violating Ms. JACKSON's constitutional rights, Defendant SLIMACK sought to continue his consistent practice of applying excessive force.  Ms. JACKSON accordingly seeks punitive damages against Defendant SLIMACK.

73.     Pursuant to 42 U.S.C. § 1988, SHAREESE PETERS JACKSON seeks attorneys' fees in bringing and prosecuting this action.

WHEREFORE, Plaintiff SHAREESE PETERS JACKSON demands judgment against Defendant SLIMACK in his individual capacity, including costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

## COUNT II
### Unofficial Policy, Practice, Procedure of Custom of Excessive Force
### 42 U.S.C. § 1983
### (Against Miami-Dade County)

74.     Plaintiff realleges paragraphs 1 through 62 of the allegations as if fully set forth herein.

75.     At all times relevant to this action, Defendant MIAMI-DADE COUNTY had an unofficial policy, practice, procedure and/or custom of allowing police officers to use excessive force with there being no imminent threat to the police officers.

76.     The aforementioned policies, practices, procedures, and/or customs were consciously chosen and officially sanctioned by MIAMI-DADE COUNTY policymakers. Alternatively, the aforementioned policies, practices, procedures, and/or customs were so widespread and longstanding that MIAMI-DADE COUNTY's policymakers must have known

and therefore, were considered unofficial custom, usage, and practice with the force of law. Nonetheless, no action was taken to stop it.

77.     Defendant MIAMI-DADE COUNTY permitted this unofficial policy and practice to continue by failing to investigate and discipline officers, such as Defendant SLIMACK, who were the subject of numerous complaints for excessive use of force.

78.     Defendant MIAMI-DADE COUNTY permitted this unofficial policy and practice to continue by failing to conduct any reasonable investigation into the numerous complaints Defendant SLIMACK received for using excessive force.

79.     This unofficial policy, practice, procedure and/or custom caused the violation of Ms. JACKSON's constitutional rights under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

80.     Defendant MIAMI-DADE COUNTY instituted a program that it either knew or should have known would amount to excessive force improperly being used on citizens by Defendant SLIMACK and other MDPD police officers.

81.     This unofficial policy of excessive force amounts to a department-wide exhibition of deliberate indifference to the constitutional rights of Plaintiff and other similarly situated members of the public.

82.     By instituting this grossly unconstitutional unofficial policy, practice, procedure, and/or custom, Defendant MIAMI-DADE COUNTY exhibited a willful, wanton and callous disregard for the constitutional rights of Ms. JACKSON.

83.     Defendant MIAMI-DADE COUNTY implemented and controlled this unofficial policy, practice, procedure, and/or custom and encouraged its officers to utilize this unofficial policy that it knew would improperly and unconstitutionally result in serious injury to individuals in the community.

{10944/00522812.1}

84.     Defendant MIAMI-DADE COUNTY had direct and actual, or at least constructive, knowledge of the constitutional violations that were occurring under its policy of excessive force, as Defendant SLIMACK has been involved in numerous situations where complaints of Defendant SLIMACK's excessive use of force have been reported to the MIAMI-DADE POLICE DEPARTMENT and its Internal Affairs Section.

85.     The moving force behind Ms. JACKSON's injuries was MIAMI-DADE COUNTY's deliberate indifference to her constitutional rights.   MIAMI-DADE COUNTY ignored the constitutional rights of members of the public who were consistently being subjected to Defendant SLIMACK's unlawful conduct.

86.     Ms. JACKSON's injuries were the obvious consequence of, and are directly linked to, the customary practices of MIAMI-DADE COUNTY, its MIAMI-DADE POLICE DEPARTMENT, and Defendant SLIMACK.

87.     As a direct and proximate result of the actions of MIAMI-DADE COUNTY, as described herein, Defendant SLIMACK was permitted to continue a pattern and custom of using excessive force in violation of the constitutional rights of Ms. JACKSON.

88.     As such, Ms. JACKSON seeks compensatory damages, costs, and all other relief that this Honorable Court deems just and proper.

WHEREFORE, Plaintiff SHAREESE PETERS JACKSON demands judgment against MIAMI-DADE COUNTY, including costs, reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, and any other relief this Court deems just and proper.

### COUNT III
**Failure to Train**
**Pursuant to 42 U.S.C. § 1983**
**(Against Miami-Dade County)**

89. Plaintiff realleges paragraphs 1 through 62 of the allegations as if fully set forth herein.

90. MIAMI-DADE COUNTY failed to properly and adequately train Defendant SLIMACK regarding his propensity to use excessive force during routine responses to disturbances.

91. The need for such training was plainly obvious to MIAMI-DADE COUNTY, including its final policymakers, as such conduct deals with a clear constitutional duty that is certain to arise in situations that police officers, including Defendant SLIMACK, face on a regular basis.

92. MIAMI-DADE COUNTY's failure to train amounted to deliberate indifference to the rights of the Ms. JACKSON and other members of the public with whom Defendant SLIMACK came into contact.

93. This failure to train caused Defendant SLIMACK to violate Ms. JACKSON's rights under the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution.

94. MIAMI-DADE COUNTY's failure to train caused Defendant SLIMACK to use excessive force and unlawfully arrest Ms. JACKSON, who was not posing a threat to Defendant SLIMACK or to anyone else.

95. MIAMI-DADE COUNTY was deliberately indifferent to Ms. JACKSON's rights under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution guaranteeing protection from unreasonable seizures, the right to be free from cruel and unusual punishments, and the right to due process.

96. Based upon the number of prior excessive use force claims against MIAMI-DADE POLICE DEPARTMENT police officer and the complaints against Defendant

SLIMACK, MIAMI-DADE COUNTY knew or should have known that there was a need to train and supervise Defendant SLIMACK.

97.     As a direct and proximate result of the actions of MIAMI-DADE COUNTY, Ms. JACKSON has suffered damages, and will continue to suffer into the future, which include physical suffering, the aggravation of a pre-existing condition, pain and suffering, disfigurement, impairment of work ability, medical expenses, loss of time, mental suffering, humiliation, disgrace, loss of enjoyment of life, and has and will continue to incur medical expenses in the treatment of her injuries.

98.     Pursuant to 42 U.S.C. § 1988, SHAREESE PETERS JACKSON seeks attorneys' fees in bringing and prosecuting this action.

WHEREFORE, Plaintiff SHAREESE PETERS JACKSON demands judgment against Defendant MIAMI-DADE COUNTY, including costs, reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, and any other relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff SHAREESE PETERS JACKSON demands trial by jury on all issues so triable.

Respectfully submitted,

HALL, LAMB HALL & LETO P.A.,
Attorneys for Plaintiff
2665 South Bayshore Drive, PH-1
Miami, Florida 33133
TEL. 305 374 5030

*s/: Andrew C. Hall*
ANDREW C. HALL
Florida Bar No.: 111480
MATTHEW P. LETO
Florida Bar No.: 014504

BERENS, FERNANDEZ & ASSOCIATES, P.A.
Attorneys for Plaintiff
2100 Ponce de Leon Blvd. Penthouse-2
Coral Gables, Florida 33134
TEL. 305 329-2990

*s/: Andres F. Fernandez*
ANDRES F. FERNANDEZ
Florida Bar No.: 111967

{10944/00522812.1}

Filing # 67764528 E-Filed 02/09/2018 01:47:38 PM

## RETURN OF SERVICE

| State of Florida | County of Miami-Dade | Circiut Court |
|---|---|---|

Case Number: 2017-026994 CA 32

Plaintiff:
**SHAREESE PETERS JACKSON**

vs.

Defendant:
**MIAMI-DADE COUNTY, a municipal entity; MARK H. SLIMAK, in his individual and his
official capacity as a Miami-Dade County Police Officer,**

For:
Matthew P Leto
Hall Lamb and Hall P.A.,
2665 South Bayshore Drive
Ph 1
Miami, FL 33133

Received by DLE Process Servers, Inc on the 2nd day of February, 2018 at 2:47 pm to be served on **Miami-Dade County c/o Mayor
Carlos A. Gimenez, 111 Nw 1 Street, Suite 2910, Miami, FL 33128.**

I, Christopher Mas, do hereby affirm that on the **5th day of February, 2018 at 9:11 am, I:**

served a **GOVERNMENT AGENCY** by delivering a true copy of the **Summons and Complaint** with the date and hour of service endorsed
thereon by me, to: **Dotty Vazquez as Mayor's Assistant** for **Miami-Dade County c/o Mayor Carlos A. Gimenez,** and informed said person
of the contents therein, in compliance with State Statutes.

I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process Server, in good standing, in the
judicial circuit in which the process was served.

Under penalties of perjury, I declare that I have read the foregoing Verified Return of Service and that the facts stated are true. F.S.
92.525.  NOTARY NOT REQUIRED PURSUANT TO F.S. 92.525

_____
Christopher Mas
1623

**DLE Process Servers, Inc**
**936 Sw 1st Avenue**
**#261**
**Miami, FL 33130**
**(786) 220-9705**

Our Job Serial Number: DLE-2018003112

Copyright © 1992-2018 Database Services, Inc. - Process Server's Toolbox V7.1i

*2/5/ I8*
*9:51o*
*Dotty*
*Vazqo*

| X | IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. |
|---|---|
|  | IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. |

| **CIVIL DIVISION** | **CIVIL ACTION SUMMONS** | **CASE NUMBER** |
|---|---|---|
|  |  | 2017-026994 CA 32 |

| **PLAINTIFF(S)** | **VS.     DEFENDANT(S)** | **CLOCK IN** |
|---|---|---|
| Shareese Peters Jackson | MIAMI-DADE COUNTY, a municipal entity; MARK H. SLIMAK, in his individual and his official capacity as a Miami-Dade County Police Officer, |  |

| **To Defendant(s):** | **Registered Agent Name & Address:** |
|---|---|
| Miami-Dade County c/o Mayor Carlos A. Gimenez | Office of The Mayor 111 NW 1 Street, Suite 2910, Miami, Florida 33128 |

A lawsuit has been filed against you. You have twenty (20) calendar days after this summons is served on you to file a written response to the Counts of the attached Complaint with the clerk of this court. A phone call will not protect you; your written response, including the case number given above and the names of the parties, must be filed if you want the Court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the Court, located at:

Dade County Courthouse
Clerk of Courts
Room 138
73 W. Flagler Street
Miami, Florida 33130

Additional Court locations are printed on the back of this form.

You must also mail or take a copy of your written responses to the "Plaintiff/Plaintiff's Attorney" named below.

| **Plaintiff/Plaintiff Attorney** Matthew P. Leto | **Address:** Hall, Lamb, Hall & Leto, P.A., 2665 South Bayshore Drive, Penthouse One, Miami, FL 33133 |
|---|---|

**TO EACH SHERIFF OF THE STATE OF FLORIDA:** You are commanded to serve this Summons and a copy of the Complaint of this lawsuit on the above named defendant.

| **CLERK OF COURTS** | **Court Seal** BY: _____ DEPUTY CLERK | **DATE** FEB 0 2 2018 |
|---|---|---|

{10944/00522914.1}

**IMPORTANTE**

Usted ha sido demandado legalmente. Tiene 20 dias contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo protegera. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el case y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, ustead puede consultar in un abogado immediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparencen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presente su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona demoninada abajo como "Plaintiff/Plaintiff Attorney" (Demandante o Abogado del Demandante).

**IMPORTANT**

Des poursuites judiciaires ont été entreprises contre vous.  Vous avez 20 jours consécutifs à partir de la date de l'assignation de cette citation pour déposer une réponse écrite à la plainte ci-jointe auprès de ce tribunal.  Un simple coup de téléphone est insuffisant pour vous protéger.  Vous êtes obligé de déposer votre réponse écrite, avec mention du numéro de dossier ci-dessus et du nom des parties nommées ici, si vous souhaitez que le tribunal entende votre cause.  Si vous ne déposez pas votre réponse écrite dans le délai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent être saisis par la suite, sans aucun préavis ultérieur du tribunal.  Il y a d'autres obligations juridiques et vous pouvez requérir les services immédiats d'un avocat.  Si vous ne connaissez pas d'avocat, vous pourriez téléphoner à un service de référence d'avocats ou à un bureau d'assistance juridique (figurant à l'annuaire de téléphones)

Si vous choisissez de déposer vous-même une réponse écrite, il vous faudra également, en même temps que cette formalité, faire parvenir ou expédier une copie de votre réponse écrite au "Plaintiff or Plaintiff's Attorney" (Plaignant ou à son avocat) nommé ci-dessous.