UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-20665-CIV-KING/SIMONTON

SHAREESE PETERS JACKSON,

    Plaintiff,

v.

MIAMI-DADE COUNTY, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION ON
## DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

Presently pending before this Court is Defendant Miami-Dade County's Motion to Dismiss Amended Complaint, ECF No. [3]. The Plaintiff has filed a Response in Opposition, ECF No. [6], and the Defendant has replied, ECF No. [9]. This motion has been referred to the undersigned Magistrate Judge by the Honorable James Lawrence King, United States District Judge, ECF No. [11]. For the reasons stated below, it is RECOMMENDED that the Motion to Dismiss be GRANTED, and that the Plaintiff be permitted to file a second amended complaint.

    I.    **THE AMENDED COMPLAINT**

        A.    **The Claims for Relief**

Plaintiff Shareese Peters Jackson has filed a three-count Amended Complaint against Defendants Miami-Dade County and Mark H. Slimack, a Miami-Dade County police officer, seeking to recover damages she suffered as the result of the alleged use of excessive force against her in connection with an unlawful detention and arrest, ECF [1-1] at ¶3. The Plaintiff alleges that Defendant Slimack "illegally and deliberately used excessive force and unlawfully arrested Ms. Jackson, in violation of multiple Miami-Dade County Police Department ("MDPD") policies and well-established law." ECF No. [1-1] at

¶ 14.  The Complaint seeks relief pursuant to 42 U.S.C. § 1983 against Defendant Slimack for using unnecessary and excessive force, in violation of the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution (Count 1); against Miami-Dade County for having an unofficial policy, practice, procedure and custom of allowing police officers to use excessive force (Count 2); and against Miami-Dade County for failing to properly and adequately train Defendant Slimack regarding his propensity to use excessive force during routine responses to disturbances (Count 3).[1]

The presently pending Motion to Dismiss pertains only to Defendant Miami-Dade County; Officer Slimack has filed an Answer and there is no contention that the Complaint fails to state a claim for relief against him.

> B.   The Events That Led to the Plaintiff's Arrest

The following facts are taken from the Complaint, and are presumed to be true for the purpose of evaluating the Motion to Dismiss.  According to the Amended Complaint, the relevant events began on December 31, 2013, when the Plaintiff, her fiancé and her

---

[1]  The Plaintiff asserts in paragraph 61 in the General Allegations section of her Amended Complaint that she is seeking "to redress the deprivation . . . of those rights, privileges, and immunities secured to [her] by the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983, for deprivation of her right to equal protection, to be free from discrimination on the basis of her gender and race, and for committing various torts and violations arising under the laws and statutes of the State of Florida." ECF No. [1-1].  Her claims in the specific Counts that follow the General Allegations, however, seek relief only for unlawful arrest and the use of excessive force in violation of her right to be free from "unreasonable seizures, the right to be free from cruel and unusual punishment, and the right to due process."  ECF No. [1-1] at ¶ 68 (Count 1); ¶¶ 79, 87 (Count 2); ¶ 95 (Count 3).  Since the specific counts do not mention equal protection, gender and race discrimination, or violations of state law, and the general allegations contain only passing mention of these rights; and neither party has addressed these assertions in connection with the motion to dismiss, it appears that those allegations are surplusage and therefore they are not further discussed.

In addition, the undersigned notes that claims based on the excessive use of force in connection with an arrest are analyzed under the Fourth Amendment and not the Fourteenth Amendment (although the Fourth Amendment has been made applicable to state and local government actors through the Fourteenth Amendment).  *Graham v. Connor*, 490 U.S. 386, 395 (1989).  Finally, the Eighth Amendment's proscription of cruel and unusual punishment does not attach until after conviction.  *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977).

2

cousin were at Hunter's Hurricane Lounge to celebrate the New Year, ECF No. [1-1] at ¶ 23. A group of men harassed them and appeared to be trying to start a fight. Thereafter, Defendant Slimack responded to a call involving an alleged fight at the lounge, ECF No. [1-1] at ¶¶ 13, 25. Ms. Jackson alleges that she and her companions were standing outside the lounge waiting for the police to arrive, when Officer Slimack arrived, ECF No. [1-1] at ¶¶ 25, 26. Plaintiff Jackson requested his help, and told him that she was recovering from a broken jaw; Defendant Slimack pushed Jackson aside and told her that he was not there for her, ECF No. [1-1] at ¶¶ 27, 28. Defendant Slimack then went inside the bar. There was no fight inside the bar, and he then returned outside to speak to Ms. Jackson, ECF No. [1-1] at ¶ 29. Ms. Jackson refused to speak to him and told him "that he had behaved like an 'asshole' and [she] no longer needed his help, ECF No. [1-1] at ¶30. Defendant Slimack then grabbed Ms. Jackson by the arm and back of the neck and slammed her face and upper body against his police car, ECF No. [1-1] at ¶ 31. As he continued to "smash Ms. Jackson's face and jaw against his police vehicle, Defendant Slimack told her that 'since [she had] called [him] an asshole, [he would] show [her] an asshole.' (brackets contained in Complaint)," ECF No. [1-1] at ¶ 32. Defendant then began to choke Ms. Jackson; when she complained that he was choking her and that he was supposed to help her, he ordered her to put her hands behind her back and he handcuffed her, ECF No. [1-1] at ¶¶ 34, 35.

      Defendant Slimack accused Ms. Jackson of being drunk, stating that he could smell alcohol on her. Ms. Jackson responded that she had not been drinking but was taking prescription medication because she was recovering from a broken jaw and surgeries, ECF No. [1-1] at ¶¶ 36, 37. Ms. Jackson requested a breathalyzer test, but Officer Slimack refused and arrested her for disorderly intoxication, ECF No. [1-1] at ¶¶ 38, 39. Ms. Jackson alleges that she did not commit any actions that would be deemed to incite violence or breach the peace, ECF No. [1-1] at ¶ 40.

Following her arrest, Ms. Jackson was detained in a holding cell for approximately 24 hours, during which time her jaw began to swell and she requested medical assistance, ECF No. [1-1] at ¶¶ 41-43. She was not provided medical assistance during this time, but following her release her jaw continued to swell and the pain worsened, ECF No. [1-1] at ¶ 44.[2] A few days later, she sought medical attention and learned that her jaw had become infected; subsequently, she was admitted to the hospital where she remained for a week and was treated for the infection in her jaw, ECF No. [1-1] at ¶¶ 46-49. Ultimately, the charge of disorderly intoxication was dismissed, ECF No. [1-1] at ¶ 50.

### C. Allegations Regarding the Liability of Miami-Dade County

In the General Allegations section of the Complaint, the Plaintiff sets forth various allegations that apply to all counts, including some allegations relevant to the liability of Defendant Miami-Dade County. Those allegations are summarized below, followed by the more detailed allegations that pertain specifically to Counts 2 and 3 of the Complaint brought against Defendant Miami-Dade County.

The Plaintiff alleges that Defendant Miami-Dade County is a political subdivision of the State of Florida that operates and controls MDPD and its police officers, including Defendant Slimack, ECF No. [1-1] at ¶¶7, 8. The Plaintiff alleges, upon information and belief, that Defendant Slimack has been employed as a police officer with MDPD since 1998, and during that time, the Internal Affairs Section of MDPD's Professional Compliance Bureau had received at least 16 complaints against Defendant Slimack, ECF No. [1-1] at ¶¶ 17, 18. At least ten of those complaints involved the alleged use of excessive force, 85% of them came from ethnic minorities and the rest were filed by women, ECF No. [1-1] at ¶ 19. The Plaintiff alleges that MDPD's Internal Affairs records show that Defendant Slimack has been the subject of numerous complaints similar to the

---

[2] The Complaint does not contend that the failure to provide medical treatment during her detention constitutes a constitutional violation.

4

complaint of the Plaintiff, ECF No. [1-1] at ¶ 51.

The MDPD Standard Operating Procedures set forth standards governing the use of force in Chapter 31, ECF No. [1-1] at ¶ 52. Defendant Slimack failed to comply with those procedures, which resulted in the Plaintiff's unlawful arrest and in her suffering serious injury, ECF No. [1-1] at ¶53. The Plaintiff alleges that Defendant Miami-Dade County failed to adequately train and educate MDPD police officers, including Defendant Slimack, in the use of reasonable and proper force, and failed to enforce the MDPD Procedures, ECF No. [1-1] at ¶ 54. The Plaintiff also alleges that Defendant Miami-Dade County "failed to conduct any investigation into whether there were policies and training in place to prevent the incident at issue in the Plaintiff's Complaint, or whether Defendant Slimack conducted himself properly and in compliance with the MDPD Procedures," ECF No. [1-1] at ¶ 55.

The Complaint further alleges that Defendant Miami-Dade County, with the knowledge of its police chief, authorized, tolerated as institutionalized practices, and ratified its police officers' misconduct by failing to properly discipline and control its employees, including Defendant Slimack, who according to public records requests and his Internal Affairs file, was known to be unnecessarily violent in his treatment of persons in the community; by failing to establish and administer effective procedures for dealing with police misconduct complaints; and by systematically responding to such complaints perfunctorily with denials intended to mislead or appease the public and without regard to the evidence, ECF No. [1-1] at ¶ 56.

The Plaintiff also alleges that the abuse suffered by the Plaintiff due to the excessive and unnecessary force used by Miami-Dade County and its employee, Defendant Slimack, is part of a larger and historically repetitive pattern of use of excessive force that amounts to an unofficial custom and/or policy of Miami-Dade County, which was adopted and approved by its various police chiefs, ECF No. [1-1] at ¶

5

57. The Plaintiff alleges that MDPD has repeatedly been the subject of numerous civilian complaints of police misconduct and use of excessive force; and, many officers, including Defendant Slimack, are repeat offenders who are not sufficiently disciplined and are emboldened to continue the same behavior without fear of repercussions, ECF No. [1-1] at ¶ 58.

The Plaintiff alleges that Defendant Miami-Dade County "has historically failed to discipline or prosecute officers for known incidents of excessive use of force, to adequately investigate complaints of excessive use of force, and to take corrective action despite evidence of excessive use of force by MDPD officers," and that the Plaintiff's claim is not an isolated incident, but part of "a pattern and practice of misconduct . . . accepted and/or condoned by" MDPD and its police chiefs, ECF No. [1-1] at ¶ 59. The Plaintiff alleges, upon information and belief, that Defendant Slimack "has been cited or investigated on numerous occasions by the MDPD Internal Affairs Section for similar misconduct, that Defendant Miami-Dade County had prior notice of Defendant Slimack's propensity to use excessive force and/or to abuse his position as a police officer, but took no meaningful steps to stop his unlawful use of authority," ECF No. [1-1] at ¶ 60.

In her allegations pertaining specifically to Count 2, which is a claim for relief against Defendant Miami-Dade County based on an unofficial policy, practice, procedure or custom of excessive force, the Plaintiff makes the following allegations.

The Plaintiff alleges that Defendant Miami-Dade County had an unofficial policy, practice or custom of allowing police officers to use excessive force when there was no imminent threat to the police officers, which was consciously chosen and sanctioned or was so widespread and longstanding that the Defendant's policy makers must have known about it; and, therefore was an unofficial custom, usage and practice with the force of law, ECF No. [1-1] at ¶ 76. Defendant Miami-Dade County permitted this

unofficial policy to continue by failing to investigate and discipline officers like Defendant Slimack who were the subjects of numerous complaints of excessive use of force, ECF No. [1-1] at ¶ 78.

The Plaintiff alleges that the above policy and practice caused the alleged violations of Plaintiff Jackson's rights. The Plaintiff provides the following description of the actions of Miami-Dade County:

> **80. Defendant MIAMI-DADE COUNTY instituted a program that it either knew or should have known would amount to excessive force improperly being used on citizens by Defendant SLIMACK and other MDPD police officers.**
>
> **81. This unofficial policy of excessive force amounts to a department-wide exhibition of deliberate indifference to the constitutional rights of Plaintiff and other similarly situated members of the public.**
>
> **82. By instituting this grossly unconstitutional unofficial policy, practice, procedure, and/or custom, Defendant MIAMI-DADE COUNTY exhibited a willful, wanton and callous disregard for the constitutional rights of Ms. JACKSON.**
>
> **83. Defendant MIAMI-DADE COUNTY implemented and controlled this unofficial policy, practice, procedure and/or custom and encouraged its officers to utilize this unofficial policy that it knew would improperly and unconstitutionally result in serious injury to individuals in the community.**
>
> **84. Defendant MIAMI-DADE COUNTY had direct and actual, or at least constructive, knowledge of the constitutional violations that were occurring under its policy of excessive force, as Defendant SLIMACK has been involved in numerous situations where complaints of Defendant SLIMACK'S excessive use of force have been reported to the MIAMI-DADE POLICE DEPARTMENT and its Internal Affairs Section.**
>
> **85. The moving force behind Ms. JACKSON's injuries was MIAMI-DADE COUNTY's deliberate indifference to her constitutional rights. MIAMI-DADE COUNTY ignored the constitutional rights of members of the public who were consistently being subjected to Defendant SLIMACK's unlawful conduct.**

In Count 3 of the Complaint, the Plaintiff seeks relief based upon the Defendant Miami-Dade County's failure to train Defendant Slimack "regarding his propensity to use excessive force during routine responses to disturbances, ECF No. [1-1] at ¶ 90. The Plaintiff alleges that the need for such training was obvious to Defendant Miami-Dade County, including its final policymakers, "as such conduct deals with a clear constitutional duty that is certain to arise in situations that police officers, including Defendant SLIMACK, face on a regular basis," and that the failure to train caused Defendant Slimack to use excessive force and unlawfully arrest the Plaintiff, ECF No. [1-1] at ¶¶ 91, 94. The Plaintiff further alleges that, based upon the number of prior excessive force claims against MDPD police officers and the complaints against Defendant Slimack, Defendant Miami-Dade County knew or should have known that there was a need to train and supervise Defendant Slimack, ECF No. [1-1] at ¶ 96.

II. **THE MOTION TO DISMISS**

Defendant Miami-Dade County contends, based on the law established in *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658 (1978), and its progeny, that the Complaint fails to contain sufficient facts to establish a plausible claim that the County is liable for the Plaintiff's alleged injuries, ECF No. [3]. In this regard, the County makes the following five arguments, which are addressed in more detail in the body of this Report and Recommendation:

    A. The County cannot be held vicariously liable for the actions of Officer Slimack.

    B. The Plaintiff failed to properly allege either an official or unofficial County custom or practice of using excessive force.

    C. The Plaintiff has failed to allege sufficient facts to support a claim based on the failure to train Officer Slimack.

    D. The Plaintiff has failed to allege sufficient facts to support a claim based

upon the County's alleged failure to investigate into whether there were policies and training in place to prevent the incident, or whether Officer Slimack conducted himself in compliance with MDPD procedures.

E. The Plaintiff has failed to allege sufficient facts to demonstrate that any unconstitutional policy was the cause of the Plaintiff's injuries.

In response, the Plaintiff concedes that the County cannot be held vicariously liable for the acts of its officers, and states that she has not sought to predicate liability based on vicarious liability, ECF No. [6] at 8. Therefore, this contention will not be further addressed in this Report and Recommendation.

With respect to the other bases asserted in the Motion to Dismiss, the Plaintiff contends that she has properly alleged facts necessary to establish a widespread pattern of unconstitutional activity, that this activity was the cause of the violation of her constitutional rights based upon allegations that the Defendant, including the Chief of Police, failed to properly investigate grievances against Officer Slimack, ECF No. [6] at 3-5. The Plaintiff also asserts that she has properly alleged facts to support her claim that the Defendant's failure to train its officers on the use of excessive force despite awareness of "a troubling pattern of injuries and deaths resulting from the use of unconstitutional excessive force by MDPD officers, caused her injuries," ECF No. [6] at 6-8. To support this claim, the Plaintiff has attached copies of documents concerning the County's failure to re-establish an independent review panel with respect to the actions of MDPD officers, ECF No. [6] at 7-8, and attached exhibits A and B.

In its Reply, the County reiterates its position that the Plaintiff has not set forth any facts to support a widespread practice of constitutional violations, or to establish that her injuries were caused by an unconstitutional policy or practice, ECF No. [9] at 2-4, 6-7. In addition, the County objects to the Plaintiff's use of allegations regarding the failure to re-establish an independent review panel and the attached exhibits since those

allegations were not contained in the Complaint, ECF No. [9] at 4-5. On the merits, the County claims that any amendment to add these allegations would be futile, ECF No. [9] at 5-6.

### III. LEGAL ANALYSIS

#### A. Framework for Analysis

##### 1. *Standards Governing Motions to Dismiss*

In order to state a claim for relief, Federal Rule of Civil Procedure Rule 8(a) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). However, the Court need not accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In determining whether to grant a motion to dismiss, the court may only consider the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which a court may take judicial notice. *LaGrasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562-63 (2007), the Supreme Court clarified the pleading standard for the evaluation of motions to dismiss, rejecting the previous standard established by *Conley v. Gibson,* 355 U.S. 4, 45-46 (1957), under which a motion to dismiss would be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support his claim which would entitle him to relief."[3] In *Twombly*, the Court explained: "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a

---

[3] Cases that relied upon the broad language of *Conley* to deny motions to dismiss are therefore of limited value. In fact, if this case were being decided under the *Conley* standard, it is likely that the undersigned would recommend denial of the Motion to Dismiss.

formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. The Court emphasized these requirements two years later, explaining: "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

An examination of the facts of *Iqbal* illustrates the type of allegations that are considered too conclusory to support a claim for relief. *Iqbal* involved a *Bivens*[4] Complaint brought by a Pakistani Muslim who was detained following the September 11, 2001, terrorist attacks, which alleged that the Attorney General and FBI Director had violated the plaintiff's civil rights by adopting an unconstitutional policy that subjected him to harsh conditions of confinement based on his race, religion or national origin. The *Iqbal* Court stated that the Complaint contained the following allegations:

> "[T]he [FBI], under the direction of Defendant MUELLER, arrested and detained thousands of Arab Muslim men ... as part of its investigation of the events of September 11." It further alleges that "[t]he policy of holding post– September–11th detainees in highly restrictive conditions of confinement until they were 'cleared' by the FBI was approved by Defendants ASHCROFT and MUELLER in discussions in the weeks after September 11, 2001." Lastly, the complaint posits that petitioners "each knew of, condoned, and willfully and maliciously agreed to subject" respondent to harsh conditions of confinement "as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest." The pleading names Ashcroft as the "principal architect" of the policy, and identifies Mueller as "instrumental in [its] adoption, promulgation, and implementation."

---

[4] *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971) established that U.S. government officials could be sued for violations of constitutional rights, and is the federal analog to suits brought against state officials under 42 U.S.C. § 1983. *Iqbal*, 556 U.S. at 675.

556 U.S. at 669 (Internal citations to paragraphs of the Complaint omitted).

In determining that the allegations were insufficient to establish a plausible claim for relief, the Court began its analysis by identifying the allegations of the Complaint that were not entitled to the assumption of truth because they were conclusions, or bare assertions, that were merely recitations of the elements of the cause of action. The Court therefore disregarded allegations that the defendants "knew of, condoned, and willfully and maliciously agreed to subject [the plaintiff] to harsh conditions of confinement as a matter of policy, solely on account of his religion, race and/or national origin and for no legitimate penological interest;" that defendant Ashcroft "was the principal architect of this invidious policy;" and, "that Mueller was instrumental in adopting and executing it." 556 U.S. at 680-81. The Court then turned to the second step of the analysis, which was to examine whether the factual allegations that remained were sufficient to establish a plausible claim for relief; and, the Court determined they were insufficient.

Thus, in the case at bar, the Court must examine the factual allegations of the Complaint and the elements of the claims for relief to determine whether the Plaintiff has established a plausible claim for municipal liability under 42 U.S.C. § 1983. There is no heightened pleading requirement for § 1983 claims, *Leatherman v. Tarrant Cty. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993), but following *Twombly* and *Iqbal*, it is not sufficient to merely allege the elements of the claims for relief without providing sufficient factual detail to establish the reasonable plausibility of the claim.

2. *Standards Governing Municipal Liability under § 1983*

Title 42, United States Code, Section 1983 provides, in pertinent part, "Every person who, under color of [law], subjects, or causes to be subjected, any . . . other person . . . to the deprivation of any rights, privileges, or immunities secured by the

12

Constitution and laws, shall be liable to the party injured." In *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658 (1978), the Supreme Court held that a municipality qualified as a "person" within the meaning of this statute, and set forth the elements that must be proven to establish municipal liability. The Court held that a municipality may not be held vicariously liable for the acts of its employees, but can be held liable only where an official policy or custom directly caused the constitutional violation; *i.e.*, was the "moving force" behind the injuries. An official policy or custom can either be a rule or regulation formally adopted by the governmental entity; a policy statement or decision made by the governmental agency's policy maker; or a practice or course of conduct that is so widespread that it has acquired the force of law even if it has not been formally adopted. In addition, an official policy or custom may be found if there is proof that there was a practice that was so persistent, widespread or repetitious that the government entity's policy-maker either knew of it or should have known of it. *AFL-CIO V. City of Miami*, 637 F.3d 1178, 1187 (11th Cir. 2011).

A municipality can also be held liable when its employees cause a constitutional injury as a result of the municipality's failure to adequately train or supervise them. However, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *accord Connick v. Thompson,* 563 U.S. 51, 61-62 (2011). Deliberate indifference is established "when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights" and "the policymakers choose to retain that program." *Connick*, 563 U.S. at 61. Liability based on a failure to train attaches only when the deficiency in training actually caused the constitutional violation. *City of Canton*, 489 U.S. at 391.

### B. Application of the Law to the Case at Bar

#### 1. *Excessive Force Claim*

The Defendant County initially contends that the Plaintiff has failed to allege sufficient facts to support either an official or unofficial County custom or practice of using excessive force, ECF No. [3] at 5-10. Specifically, the County argues that although the Plaintiff alleges that the County "had an unofficial policy, practice/ procedure and/or custom of allowing police officers to use excessive force with there being no imminent threat to the police officers," and that the County "permitted this unofficial policy and practice to continue by failing to investigate and discipline officers, such as Defendant Slimack," and "failed to properly and adequately train Defendant Slimack regarding his propensity to use excessive force during routine responses to disturbances," these are vague and conclusory allegations that are insufficient to allege a widespread practice that would constitute the required unofficial policy of the County. The Defendant contends that the Plaintiff has failed to include factual allegations that would support a plausible claim for relief since the only factual detail provided concerns the single incident that forms the basis for the Complaint. To support this contention, the Defendant cites numerous cases where Complaints with only vague and conclusory allegations were dismissed based on an insufficient factual predicate to support the existence of an unofficial policy or custom.

In addition, the Defendant asserts that the contention that the County is liable based on its failure to investigate grievances filed against Officer Slimack is also insufficient since there is no allegation that these grievances involved constitutional violations as opposed to unsustained accusations of excessive force. The Defendant contends that the existence of mere accusations is insufficient to establish an unofficial practice or custom of permitting or encouraging the use of excessive force.

Finally, with respect to the allegations that the alleged constitutional violations

were adopted by the police chiefs, the Defendant argues that this is not sufficient to establish liability since the final policymaking authority for the County rests with the Mayor and the Board of County Commissioners, not the police chiefs.

In sum, the Defendant County contends that the Plaintiff has failed to allege sufficient facts to plausibly establish that the County has a widespread pattern of condoning excessive force, and therefore the claims against the County must be dismissed.

In response, relying on *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986) and *Rivas v. Figueroa*, No. 11-23195-CIV, 2012 WL 1378161 at *3 (S.D. Fla. April 20, 2012), the Plaintiff argues that a Complaint is legally sufficient if it alleges repeated incidents involving the use of excessive force in violation of the rules and regulations for the operation of the police department that are known to the municipality, and the municipality fails to rectify the situation. Thus, the Plaintiff contends that the allegations regarding the existence of 16 complaints filed against Officer Slimack, ten of which involved allegations of unconstitutional excessive force, is sufficient to establish a widespread pattern of unconstitutional activity. The Plaintiff also states that the Defendant had ample time to review these complaints and either punish, reprimand or attempt to rehabilitate Officer Slimack, but has remained deliberately indifferent to the use of unconstitutional excessive force.

In *Depew v. City of St. Mary's*, 787 F.2d 1496, 1499 (11th Cir. 1986), the Eleventh Circuit explained the standards for determining the sufficiency of the evidence to support municipal liability:

> Section 1983 provides a fault-based analysis for imposing municipal liability; therefore, plaintiffs must establish that the city was the person who caused them to be subjected to their deprivation. To establish a policy or custom, it is generally necessary to show a persistent and wide-spread practice. Moreover, actual or constructive knowledge of such customs must be attributed to the governing body of the municipality.

15

> Normally random acts or isolated incidents are insufficient to establish a custom or policy. *Bennett v. City of Slidell*, 728 F.2d 762, *on rehearing*, 735 F.2d 861 (5th Cir. 1984) (en banc). However, the custom need not receive formal approval. *Monell*, 436 U.S. at 691.
>
> In this case, while the city provided rules and regulations for the operation of its police department, these rules were violated on numerous occasions. The city, however, failed to rectify the situation. The evidence revealed several incidents involving the use of unreasonable and excessive force by police officers. Therefore, the city had knowledge of improper police conduct, but failed to take proper remedial action. The continued failure of the city to prevent known constitutional violations by its police force is precisely the type of informal policy or custom that is actionable under section 1983.

Numerous cases have considered whether complaints allege sufficient facts to establish a plausible claim for relief under this standard. Most recently, for example, in *McCants v. City of Mobile*, No. 17-14834, 2018 WL 4672875 (11th Cir. Sept. 27, 2018), the Eleventh Circuit held that allegations were insufficient to support a claim for relief against the City of Mobile since they were too conclusory and not supported by sufficient factual detail. The Complaint alleged that the police officer responding to the scene of an accident screamed at and hit one plaintiff who was a witness to the accident, that the officer had a history of anger problems, had filed a false police report regarding the accident, and that Internal Affairs had refused the request to investigate the officer. The Complaint also alleged that the City "developed and maintained policies, procedures, and customs that exhibited deliberate indifference to their constitutional rights." The Eleventh Circuit affirmed dismissal of the Complaint, holding that the allegations failed to contain sufficient facts to raise the right to relief above a speculative level. *See also Marantes v. Miami-Dade County*, No. 15-13333, 649 F. App'x 665 (11th Cir. April 28, 2016) (concluding that district court correctly dismissed *Monell* claim where complaint only alleged two incidents of excessive force and thus failed to show that the county had a "longstanding and widespread practice" of engaging in excessive force).

Numerous other cases similarly have held that general allegations of widespread misconduct, in the absence of allegations of specific instances, are insufficient to establish the existence of a custom or policy and thus do not state a plausible claim for relief. *See, e.g., Gaviria v. Guerra*, No. 17-23490-CIV-ALTONAGA, 2018 WL 1876124 (S.D. Fla. Apr. 19, 2018); *Lordeus v. Miami-Dade County*, 263 F. Supp. 3d 1307 (S.D. Fla. 2017); *Mighty v. Miami-Dade County*, No. 14-23285-CIV, 2015 WL 5031571 (S.D. Fla. Jun. 9, 2015) (collecting cases), *report and recommendation adopted* (S.D. Fla. Aug. 25, 2015).

Although the factual allegations of the Complaint concerning the incident at issue are quite detailed and clearly sufficient to state a claim for the unconstitutional use of force by Officer Slimack, they fall short of what is needed to establish a plausible claim for relief against the County. Although the Plaintiff asserts that information regarding prior incidents of excessive force used by Officer Slimack has been obtained through public records requests and review of internal affairs files, no facts regarding such incidents, such as a description of the excessive force complaints, or disposition of the complaint has been included. In this regard, cases decided after *Twombly* and *Iqbal* which have upheld the sufficiency of Complaints involving similar municipality liability claims have included that type of information. For example, in *Rivas*, a review of the underlying Complaint[5] reflects that it specifically listed and described sixteen analogous incidents of alleged constitutional violations by City of Miami Beach police officers where the officers had not faced repercussions. This was sufficient to allege a plausible claim that the City of Miami Beach had a custom of permitting the unconstitutional use of excessive of force, and therefore the motion to dismiss the complaint was denied. Similarly, in *Vasquez v. City of Miami Beach,* 895 F. Supp. 2d 1275 (S.D. Fla. 2012), the Complaint was sufficient where it alleged and provided the details for 38 similar incidents of excessive force allegedly committed without repercussions. *Accord Frazier v. Sheriff*

---

[5] *Rivas v. Figueroa*, No. 11-23195-CIV-SCOLA, ECF No. [22] (S.D. Fla. Nov. 7, 2011).

*Scott Israel*, No. 18-cv-61418-BLOOM, 2018 WL 599622 (S.D. Fla. Sept. 25, 2018) (complaint sufficient where it contained allegations setting forth details of eight past incidents of excessive force and the failure to properly investigate them, which were assumed to be true for purposes of a motion dismiss); *Destra v. Demings*, No. 6:15-cv1143-Orl-31TBS, 2016 WL8939119, *3 (M.D. Fla. Feb. 8, 2016) (finding complaint sufficient where plaintiff alleged that officer involved in incident was the subject of 44 prior complaints, 29 of which were "misuse of force" or excessive force, alleged that 13 of the 29 complaints were closed within 24 hours of filing, and that the officer was only reprimanded for one of the complaints).

Thus, although it is a close case, in the case at bar, a review of the allegations set forth above concerning the existence of a policy or practice of permitting the use of excessive force reveals that they are the same type of conclusory allegations that were found insufficient in *Iqbal*, *AFL-CIO*, *McCants*, *Gaviria,* and *Lordeus.*[6] Although the Plaintiff alleges generally that Defendant Slimack, who has been an officer for twenty years, has been the subject of sixteen past complaints, at least ten of which involve the excessive use of force, the Complaint provides no factual information regarding those complaints, and thus this allegation is also insufficient to support a plausible claim for relief.[7] In sum, to establish the custom and policy of excessive force necessary to proceed against the County, the Plaintiff must include at least some factual detail sufficient to establish the plausibility of the conclusory allegations of the alleged

---

[6] The undersigned recognizes that the allegations in those cases were, perhaps, even more conclusory than the allegations in the case at bar. The allegations in this case, although they include a specific number of excessive force claims, remain insufficiently detailed.

[7] For example, it does not allege the recency of any of the ten past complaints of excessive force, which may be significant given the twenty-year time span of Officer Slimack's employment, or provide any details to show that the other excessive force claims were sufficiently similar. If the Plaintiff does not presently possess that information, she will be able to obtain it during the course of discovery in connection with the pending claim against Officer Slimack.

unconstitutional policy. Therefore, the undersigned recommends that Count I be dismissed with leave to amend.

### 2. *Failure to Train and Supervise Claim*

For essentially the same reasons that the Plaintiff has failed to state an excessive force claim against the County, she has also failed to state a claim based on the Defendant's failure to train and supervise Defendant Slimack. As stated above, in order to establish the County's liability based upon a failure to train and supervise its officers, including Officer Slimack, the Plaintiff is required to allege facts sufficient to plausibly support the general and conclusory allegations that the widespread use of excessive force put the County on notice that there was a need to provide training and supervision, and facts to support the conclusion that the County deliberately chose not to do so. The Complaint contains only conclusory allegations that, based on unspecified complaints about Officer Slimack and unspecified widespread complaints of excessive force, the County knew of the need for training and supervision, and deliberately failed to provide it. These barebones allegations are not sufficient, and there must be sufficient factual detail to permit the Court to find that the Plaintiff's claims are plausible. In an effort to remedy this pleading deficiency, in her Response, the Plaintiff points to facts regarding the County's failure, in February 2018, to reconvene an independent review panel in response to complaints regarding "accounts of public mistrust, corruption, and the use of unconstitutional excessive and deadly force." ECF No. [6] at 7. A copy of the resolution and related documents was attached to the Response. The Complaint, however, does not include any allegations regarding the independent review panel, and it is unclear how the failure to take action in 2018 is causally related to events that occurred on December 31, 2013, and January 1, 2014. The Court is restricted to the allegations in the Complaint in ruling on a motion to dismiss, but even assuming that the Court could take judicial notice of the documents, as argued by the Defendant, the

documents attached to the Plaintiff's Response do not reflect that the County was aware of a specific problem involving excessive force that was the product of deficient training, ECF No. [9] at 6. There are no specific instances of excessive force, or training needs, contained in the documents.

Therefore, the undersigned recommends that Count 3 of the Complaint be dismissed. Since it is not clear that an amendment would be futile, the undersigned recommends that the dismissal be without prejudice.

## IV. CONCLUSION

Based on the foregoing analysis, it is hereby

**RECOMMENDED** that the Motion to Dismiss be **GRANTED**, without prejudice, and that Plaintiff be given leave to file a Second Amended Complaint.

The parties will have fourteen days from the date of this Report and Recommendation to file written objections for consideration by the United States District Judge to whom this case is assigned. Any request for an extension of this deadline must be made within seven calendar days from the date of this Report and Recommendation. Pursuant to Eleventh Circuit Rule 3-1, and accompanying Internal Operating Procedure 3, the parties are hereby notified that failure to object in accordance with 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.

**DONE AND SUBMITTED** in chambers in Miami, Florida, on this 5th day of November, 2018.

*/s/ Andrea M. Simonton*
**ANDREA M. SIMONTON**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

Copies furnished via CM/ECF to:
The Honorable James Lawrence King, United States District Judge
All counsel of record